**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No.: |
| | ) | |
| GREYHOUND LINES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## COMPLAINT

THE UNITED STATES OF AMERICA alleges the following:

## INTRODUCTION

1.      This action is brought by the United States to enforce Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-89, as amended, and its implementing regulations, 28 C.F.R. Part 36 and 49 C.F.R. Parts 37 and 38, against Defendant Greyhound Lines, Inc. ("Defendant" or "Greyhound").   Defendant is a self-described "American icon" and the largest provider of intercity bus transportation in North America.  As such, Defendant holds the keys to independence for countless individuals with disabilities who choose to – or simply must – rely on its services in order to travel.

2.      Defendant has failed to provide full and equal enjoyment of its transportation services to passengers with disabilities, in violation of 42 U.S.C. §§ 12182 and 12184.  These failures include (1) failing to maintain accessibility features of its bus fleet, including wheelchair lifts and securement devices, in operative condition; (2) failing to ensure that personnel are trained to proficiency, including in proper operation and maintenance of accessibility features

1

and equipment, boarding assistance, securement of mobility aids, and sensitive and appropriate interaction with passengers with disabilities; (3) failing to ensure that adequate time is provided to allow individuals with disabilities to complete boarding or disembarking from its buses, and failing to permit passengers with disabilities to leave and return to the bus at intermediate and rest stops on the same basis as other passengers and to ensure that assistance is provided to passengers with disabilities as needed to enable the passenger to get on and off the bus at such stops; (4) failing to assist individuals with the use of securement systems and lifts, where necessary or upon request; (5) requiring or requesting passengers with disabilities to reschedule their trips or to travel at a time other than the time the passenger has requested in order to receive accessible transportation; (6) failing to facilitate the availability of designated priority seating; (7) failing to make reasonable modifications in its policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities; (8) failing to permit service animals to accompany individuals with disabilities in vehicles and facilities; (9) failing to provide reservation services to passengers with disabilities equivalent to those provided to other passengers; and (10) imposing a surcharge on individuals with disabilities to cover the costs of measures that are required to provide them with nondiscriminatory treatment.  In addition, Defendant has violated the ADA by excluding or otherwise denying equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to individuals because of the known disability of a person with whom the individuals are known to have a relationship or association, in violation of 42 U.S.C. § 12182(b)(1)(E).

    3.      In passing the ADA, Congress identified "the Nation's proper goals" regarding individuals with disabilities to include "equality of opportunity," "independent living" and "full

participation" for such individuals.  42 U.S.C. § 12101(a)(7).  Congress found that "discrimination against individuals with disabilities persists in such critical areas as . . . transportation," and that "individuals with disabilities continually encounter various forms of discrimination" including the discriminatory effects of transportation barriers.  42 U.S.C. § 12101(a)(3) and (5).  The ADA's prohibition against discrimination in specified public transportation services provided by private entities, such as Greyhound, is essential to furthering the ADA's purpose "to invoke the sweep of congressional authority . . . to address the major areas of discrimination faced day-to-day by people with disabilities."  42 U.S.C. § 12101(b)(4).

4.      The Attorney General has commenced this action based on reasonable cause to believe that Defendant is engaged in a pattern or practice of discrimination and reasonable cause to believe that a person or group of persons has been discriminated against and that such discrimination raises an issue of general public importance.  42 U.S.C. § 12188(b)(1)(B).  The United States seeks declaratory and injunctive relief, compensatory damages, and a civil penalty against Defendant.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action under 42 U.S.C. § 12188(b)(1)(B) and 28 U.S.C. §§ 1331 and 1345.  The Court may grant declaratory relief and further necessary or proper relief pursuant to 28 U.S.C. §§ 2201 and 2202 and may grant equitable relief, monetary damages, and a civil penalty pursuant to 42 U.S.C. § 12188(b)(2).

6.      Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1391(b) because Defendant operates and is incorporated in the state of Delaware and, as a result, resides in this judicial district, pursuant to 28 U.S.C. § 1391(c).

## PARTIES AND PRIOR ENFORCEMENT HISTORY

7.      Plaintiff is the United States of America.

8.      Defendant is a Delaware corporation with its principal place of business at 350 N. St. Paul Street, Dallas, Texas 75201.  Defendant provides intercity bus transportation and is a subsidiary, through a number of intermediate companies, of FirstGroup plc.  Defendant operates a fixed-route system within the meaning of 42 U.S.C. § 12181(4); operates over-the-road buses ("OTRBs") within the meaning of 42 U.S.C. § 12181(5) and 49 C.F.R. § 37.3; is a large operator of such buses within the meaning of 49 C.F.R. Part 37; and is a Class I motor carrier within the meaning of 49 C.F.R. § 369.3.  Defendant is a private entity that provides fixed-route transportation to the public; it is primarily engaged in the business of transporting people and its operations affect commerce.  *See* 42 U.S.C. § 12184(a) and 49 C.F.R. § 37.3.

9.      In 1999, the United States and Defendant entered into a Settlement Agreement to resolve Defendant's alleged violations of Title III of the ADA.  The Agreement expired in 2003.

## ALLEGATIONS

10.     Defendant is the largest provider of intercity bus transportation in the United States with a fleet of more than 1,000 over-the-road-buses.  According to its website (https://www.greyhound.com/en/about) (last visited December 28, 2015), Defendant serves over 3,800 destinations across North America, providing "affordable travel to nearly 18 million passengers each year in the United States and Canada."

11.     As described below, since at least January 1, 2009, Defendant has been engaged in a pattern or practice of discrimination, and Defendant has been discriminating against a person or group of persons and that discrimination raises an issue of general public importance, by failing to provide full and equal enjoyment of its transportation services to people with

disabilities, in violation of 42 U.S.C. §§ 12182 and 12184; 28 C.F.R. Part 36; and 49 C.F.R.

Parts 37 and 38.  Further, Defendant has been engaged in a pattern or practice of discrimination,

and Defendant has been discriminating against a person or group of persons and that

discrimination raises an issue of general public importance, by excluding individuals, or

otherwise denying them equal goods, services, facilities, privileges, advantages,

accommodations, or other opportunities, because of the known disability of a person with whom

the individuals are known to have a relationship or association, in violation of 42 U.S.C.

§ 12182(b)(1)(E).  Individuals with disabilities who have been the victims of Defendant's

discriminatory policies or practices, and those with relationships or associations with them, are

persons aggrieved within the meaning of 42 U.S.C. § 12188(b)(2)(B).

12.     Defendant has failed to provide buses with operable lifts to passengers who use

wheelchairs or otherwise need the lifts to access Defendant's buses.  This problem has occurred

for a variety of reasons, including (but not limited to) mechanical failures with the lifts and the

inability of Greyhound personnel to operate functional lifts.  Passengers with disabilities who

rely on lifts to board and de-board Defendant's buses have been affected by this failure,

including by delays to their travel; the inability to travel on a scheduled trip; being suspended in

mid-air on lifts; and being forced to crawl up and down the stairs on Greyhound buses or being

carried by others over the stairs.

13.     Defendant's failure to provide operable lifts affected a traveler who has

rheumatoid arthritis, diabetes, and lupus, who is substantially limited in the major life activity of

walking and the operation of the major bodily function of the endocrine system, and is an

individual with a disability within the meaning of 42 U.S.C. § 12102.  During a trip, the

wheelchair lift that the traveler was using to de-board the bus became stuck.  The traveler was

suspended in mid-air, feeling terrified and increasingly weak, for approximately 45 minutes

before a mechanic arrived.  During another trip, the same traveler was required to spend the night

at a motel due to Defendant's inability to provide a lift-equipped bus.  As a result, the traveler

ceased out-of-town travel.

14.     Defendant has failed to provide full, functioning sets of securement straps, which

exist to allow passengers in wheelchairs to secure their wheelchairs and prevent unsafe

movement of the wheelchairs during bus travel.  Among other things, this failure has caused

passengers with disabilities to miss originally-scheduled trips when buses were provided without

full sets of securement straps and/or to travel on buses without proper securement of their

wheelchairs.

15.     Defendant's failure to provide securement straps affected a traveler who has

cerebral palsy, is substantially limited in the major life activity of walking and the operation of

the major bodily functions of the brain and the neurological system, and is an individual with a

disability within the meaning of 42 U.S.C. § 12102.  The traveler uses a wheelchair and on one

trip was traveling with an acquaintance who also uses a wheelchair.  Upon boarding a

Greyhound bus, the traveler learned that there was only one functioning set of restraint straps on

the bus – another set was broken.  Greyhound personnel said that, as a result, the acquaintance

would not be allowed to board the bus.  The traveler offered to de-board and stay back, instead

allowing the acquaintance to travel on the original schedule.  Greyhound personnel refused,

stating that they had already assisted the traveler in boarding the bus.  Ultimately, both the

traveler and the acquaintance were allowed to travel on the original schedule.  The traveler used

the broken set of restraint straps during the trip so that the acquaintance could use the full set of

straps.  The traveler has also experienced Greyhound personnel's lack of knowledge regarding

how to move existing bus seats located on a "track" system to make room for wheelchairs on buses.  Due to Defendant's discrimination, the traveler has experienced, among other things, delays in travel, inconvenience, and pain.

16.     Defendant has failed to ensure that its personnel are adequately trained in the operation of accessibility features of its buses, such as wheelchair lifts.  This failure has manifested itself in multiple ways, including Greyhound drivers' inability to operate functional wheelchair lifts.

17.     Defendant's failure to adequately train its personnel in the operation of accessibility features of its buses has affected a traveler who has cerebral palsy, is substantially limited in the major life activity of walking and the operation of major bodily functions of the brain and neurological system, and is an individual with a disability within the meaning of 42 U.S.C. § 12102.  During one trip, the Greyhound bus driver, together with other Greyhound employees, were unable to operate the wheelchair lift to allow the traveler to board the bus.  In response, Defendant sent another bus to replace the first, but Greyhound personnel were initially unable to locate the key to open to the door to access the lift for this second bus.  By the time that they did, the bus was hours late in departing.  The delay caused the traveler to miss a connecting bus.  The next available connecting bus was not scheduled to depart for five hours.  As a result, an acquaintance of the traveler rented a wheelchair-accessible van and drove more than one hour each way to transport the traveler.  Due to the delay before the acquaintance's arrival, the traveler had to rely on a stranger to accompany him to the bathroom for assistance.  Several days later, when the traveler attempted to return on Greyhound, Greyhound personnel informed the traveler that the wheelchair lift was inoperable.  Once again, the traveler's acquaintance rented a

van with accessibility features and drove the traveler to the next stop.  These events caused the traveler great inconvenience, frustration, embarrassment, and humiliation.

18.     Defendant has failed to ensure that its personnel are trained to proficiency in the proper assistance of individuals with disabilities and on the respectful and courteous treatment of individuals with disabilities.  This has resulted in the failure of Greyhound personnel to provide assistance to individuals with disabilities in navigating to a bus from the bus station; provide assistance to individuals with disabilities in boarding and de-boarding Greyhound buses; and operate the "kneeling" function of a bus, which lowers the height of the access point to the bus for those individuals with disabilities who would otherwise have difficulty navigating the distance between the ground and the bus's first step.

19.     Defendant's failure to train its personnel to proficiency in the proper assistance of individuals with disabilities and on the respectful and courteous treatment of individuals with disabilities affected a traveler who is blind, is substantially limited in the major life activity of seeing, and is an individual with a disability within the meaning of 42 U.S.C. § 12102.  Upon the traveler's arrival at a Greyhound station, the traveler approached a ticket counter to request assistance boarding the bus.  Greyhound personnel assured the traveler that assistance would be provided.  The traveler went to the waiting area.  Later, a Greyhound employee told the traveler that the bus had departed.  Defendant re-routed the traveler through a different city, which caused her to have to disembark from and re-board the bus in an unfamiliar location.  This made her nervous and worried.  As a result of missing the original bus and having to travel on a different schedule, the traveler's arrival to the final destination was delayed by approximately nine hours.  These events caused the traveler great inconvenience, anxiety, distress, and delay.

20.     Defendant has failed to allow individuals with disabilities enough time to board or disembark Greyhound buses.  Defendant has also failed to allow individuals with disabilities to leave and return to the bus at rest stops and failed to assist passengers with disabilities in that process.  For a number of passengers with disabilities, this has resulted in prolonged periods without food, water, or access to restroom facilities.

21.     Defendant's failure to allow adequate time to board and disembark, allow individuals with disabilities to leave and return to the bus at rest stops, and assist passengers with disabilities in that process affected a traveler who has Reflex Sympathetic Dystrophy ("RSD"), also known as Complex Regional Pain Syndrome ("CRPS"), cannot bend her knees, and is substantially limited in the major life activities of walking, bending, lifting, and caring for oneself.  The traveler uses a wheelchair and is an individual with a disability within the meaning of 42 U.S.C. § 12102.  Unable to drive alone, the traveler relies on Greyhound for travel, including for visits to the traveler's children.  On multiple occasions over the course of numerous trips, the traveler has been left by Greyhound personnel on the bus at rest stops when other passengers have been allowed to leave the bus.  The traveler, however, cannot access the bathrooms on board Greyhound buses because of the size of the traveler's wheelchair.  Due to these experiences, the traveler now does not eat or drink before and during trips on Greyhound, and carries containers in which to urinate when denied the chance to de-board at rest stops.  The traveler has also experienced numerous inoperable wheelchair lifts (and resulting schedule changes and significant delays); Greyhound personnel's inability to operate lift doors; and being suspended four feet in mid-air on a Greyhound lift for more than ten minutes.  Defendant's discrimination has resulted in embarrassment, distress, inconvenience, fear, and humiliation to the traveler.

22.    Defendant has failed to provide assistance to individuals with disabilities with the use of lifts and securement systems when necessary (including leaving customers with disabilities on the bus at rest stops without any offer to operate the lift on their behalf) or upon request.

23.    Defendant's failure to assist with lifts and securement systems affected a traveler with cerebral palsy who is substantially limited in the major life activity of walking and the operation of the major bodily functions of the brain and the neurological system, and is an individual with a disability within the meaning of 42 U.S.C. § 12102.  The traveler uses a wheelchair.  On one occasion when traveling on Greyhound, when the traveler approached the bus to board, the driver stated that she had not been informed of the need for use of the lift and the bus was not prepared to allow boarding by lift.  Three Greyhound personnel (including the driver) discussed how to use the lift and configure the bus, delaying the departure.  Yet the lift was never deployed.  Rather, Greyhound personnel stored the traveler's wheelchair under the bus and the traveler instead (and with difficulty) climbed up the stairs.  The traveler did not exit the bus at rest stops because of Defendant's inability to deploy the lift.  The traveler crawled down the steps to de-board.  The traveler also experienced additional times when Greyhound staff did not know how to board the traveler, as well as instances when buses lacked functioning sets of securement straps.  Due to Greyhound's discrimination, the traveler has experienced delays; inconvenience; and pain (due to travel in a manual wheelchair, less comfortable for this traveler than his power wheelchair, but which can be stowed below the bus when a lift is not functioning).

24.     Defendant has requested and required individuals with disabilities to delay trips based on the lack of accessible buses, and to travel at other than requested times, resulting in extended delays and inconvenience.

25.     Defendant's failure to provide accessible buses affected a traveler who has quadriplegia, is substantially limited in the major life activity of walking, and is an individual with a disability within the meaning of 42 U.S.C. § 12102.  On numerous occasions, Defendant has failed to provide buses with functioning lifts on the traveler's booked schedules.  As a result, the traveler has experienced multiple delays and related inconvenience during numerous trips on Greyhound, including one 14-hour delay.  This traveler also experienced other disability-related incidents during travels with Greyhound, including missing securement straps.

26.     Defendant has failed to facilitate the availability of seating designated for use by individuals with disabilities.  This has included Greyhound drivers' refusals to remove their luggage from priority seating for individuals with disabilities and failures to ask persons without disabilities to move from designated seating to allow individuals with disabilities to sit there.

27.     Defendant's failure to facilitate the availability of seating designated for use by individuals with disabilities affected a traveler who has avascular necrosis of the hip and is substantially limited in major life activities including walking.  The traveler uses a walker and is an individual with a disability within the meaning of 42 U.S.C. § 12102.  During a trip on Greyhound, the traveler requested designated priority seating but the Greyhound driver refused to move his personal items from the designated priority seating.  With great difficulty and with the assistance of a travel companion, the traveler instead navigated the aisle to find a seat elsewhere in the bus.  This scenario repeated itself on at least one additional portion of the

traveler's trip on Greyhound.  The traveler experienced physical pain during and after the trip.  In addition, the traveler felt mistreated, was inconvenienced, and felt stigmatized due to a disability.

28.     Defendant has failed to make reasonable modifications to its policies, practices, and procedures, including by failing to assist individuals with disabilities with their luggage and failing to provide assistance to passengers with disabilities in boarding and de-boarding Greyhound buses.

29.     Defendant's failure to reasonably modify its policies, practices, and procedures affected a traveler who has degenerative joint disease and a back injury and is substantially limited in major life activities including walking.  The traveler is an individual with a disability within the meaning of 42 U.S.C. § 12102.  During a trip on Greyhound, the traveler requested and was repeatedly refused assistance from Greyhound employees with boarding and de-boarding Greyhound buses; Greyhound employees also refused the traveler's requests for luggage assistance.  In one such instance, the traveler instead received boarding assistance from a stranger who was a fellow Greyhound customer.  The traveler experienced pain, felt mistreated, was inconvenienced, and felt stigmatized due to a disability.

30.     Defendant has failed to permit service animals to accompany individuals with disabilities in vehicles and facilities.

31.     Prior to January 2015, Defendant's online reservation system was not usable for individuals who use wheelchairs on an equal basis as it was for individuals without disabilities.  While certain steps in Greyhound's website reservations process have changed over time, the result was the same for years:  customers who use wheelchairs were excluded from using Greyhound's online reservation system.  They were instead required to contact Defendant by phone to book their travel.

12

32.     As recently as December 2014, when any person attempted to book a ticket online through Defendant's website, at https://www.greyhound.com/farefinder/step1.aspx, he or she was prompted to fill in information regarding departure and destination locations, travel date(s), and whether the trip was one-way or round trip.  The user was also required to complete a number of "drop down" menus on that screen, to indicate how many adults, seniors, and children would be traveling on Greyhound.  A further "drop down" menu on that same screen was captioned "WheelChair," and was set at the default of "0" wheelchairs for travel.  However, if the user indicated that he or she would be traveling with "1" or "2" wheelchairs (the sole options other than the default of "0") and clicked "Search Schedules," the following pop-up message appeared:

> This transaction must be completed through Greyhound Customers with Disabilities Travel Assistance Group. This desk will ensure that this fare is available as well as confirming that adequate seats are available for the entire trip.
> Call 1-800-752-4841

After clicking "OK," the website reverted to the first step of the travel booking page (showing information previously entered for selection of destination and other basic information regarding the desired trip), without providing the passenger an opportunity to independently complete the reservation online.  Rather, they had to contact Defendant by telephone to do so.

33.     Further, individuals with disabilities who were forced to book their travel on Greyhound by phone were frequently denied lower "web only" fares and/or other discounts.

34.     Defendant charges a fee for booking by phone.   Because certain individuals with disabilities were forced to book by phone (and were not provided the option to book on the internet), Defendant subjected them to a surcharge.

35.     Defendant has discriminated against individuals by excluding them or otherwise denying them equal goods, services, facilities, privileges, advantages, accommodations, or other

opportunities because of the known disability of a person with whom the individuals are known to have a relationship or association.

36.     Defendant's association discrimination has affected the family members of a traveler with quadriplegia who is substantially limited in the major life activity of walking and is an individual with a disability within the meaning of 42 U.S.C. § 12102.  The traveler and relatives have taken family trips on Greyhound.  Each time when Defendant has failed to provide a functioning wheelchair lift, the traveler's family members have also experienced schedule disruptions, severe delays, and missed trips.

## CAUSE OF ACTION

## VIOLATIONS OF TITLE III OF THE ADA

37.     The United States incorporates all allegations in Paragraphs 1 through 36.

38.     Defendant has discriminated against individuals on the basis of disability by failing to provide full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations in violation of 42 U.S.C. §§ 12182 and 12184 and their implementing regulations at 28 C.F.R. Part 36 and 49 C.F.R. Parts 37 and 38.  Defendant has also violated the ADA by excluding or otherwise denying equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to individuals because of the known disability of a person with whom the individuals are known to have a relationship or association, in violation of 42 U.S.C. § 12182(b)(1)(E).  Defendant's violations of the ADA amount to a pattern or practice of discrimination.  Its discrimination against a person or group of persons raises an issue of general public importance.  Such discrimination includes, but is not limited to:

(a)     Failing to maintain in operative condition those features of its buses that are required to make the buses readily accessible to and usable by individuals with disabilities including, but not limited to, lifts and securement devices, in violation of 42 U.S.C. § 12184 and 49 C.F.R. § 37.161;

(b)     Failing to ensure that personnel are trained to proficiency as appropriate to their duties in, among other things, proper operation and maintenance of accessibility features and equipment, boarding assistance, securement of mobility aids, and sensitive and appropriate interaction with passengers with disabilities in violation of 42 U.S.C. § 12184 and 49 C.F.R. §§ 37.173, 37.209;

(c)     Failing to ensure that adequate time is provided to allow individuals with disabilities to complete boarding or disembarking, and failing to permit passengers with disabilities to leave and return to the bus at intermediate and rest stops on the same basis as other passengers or to ensure that assistance is provided to passengers with disabilities as needed to enable passengers to get on and off the bus at such stops, in violation of 42 U.S.C. § 12184 and 49 C.F.R. §§ 37.167(g) and (i), 37.201;

(d)     Failing to assist individuals with the use of securement systems and lifts, where necessary or upon request, in violation of 42 U.S.C. § 12184 and 49 C.F.R. § 37.165(f);

(e)     Requiring or requesting passengers with disabilities to reschedule their trips or to travel at a time other than the time the passenger has requested in order to receive accessible transportation, in violation of 42 U.S.C. § 12184 and 49 C.F.R. § 37.207(c);

(f)     Failing to facilitate for individuals with disabilities the availability of designated priority seating, in violation of 42 U.S.C. § 12184 and 49 C.F.R. § 37.167(j);

(g)      Failing to make reasonable modifications in its policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 42 U.S.C. §§ 12182(b)(2)(A)(ii), 12184(b)(2)(A); 28 C.F.R. § 36.302(a) and 49 C.F.R. § 37.5(f). This includes failing to make reasonable modifications to facilitate the availability of seating designated for use by individuals with disabilities; to assist with luggage; and to assist passengers with disabilities in boarding and de-boarding buses;

(h)      Failing to permit service animals to accompany individuals with disabilities in vehicles and facilities, in violation of 42 U.S.C. § 12184; 28 C.F.R. § 36.302(c); and 49 C.F.R. § 37.167(d);

(i)      Failing to provide reservation services to passengers with disabilities equivalent to those provided to other passengers, in violation of 42 U.S.C. § 12184 and 49 C.F.R. § 37.207(d);

(j)      Imposing a surcharge on individuals with disabilities to cover the costs of measures that are required to provide them with nondiscriminatory treatment, in violation of 28 C.F.R. § 36.301(c); and

(k)      Excluding individuals or otherwise denying them equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities because of the known disability of a person with whom the individuals are known to have a relationship or association, in violation of 42 U.S.C. § 12182(b)(1)(E).

(l)      There are victims of the Defendant's discriminatory actions or failure to act that are aggrieved persons within the meaning of 42 U.S.C. § 12188(b)(2)(B).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff United States prays that the Court:

A.      Grant judgment in favor of the United States and declare that Defendant violated Title III of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulations, 28 C.F.R. Part 36 and 49 C.F.R. Parts 37 and 38.

B.      Enjoin Defendant, its officers, agents, employees, and all others in concert or participation with it, from engaging in discrimination against individuals with disabilities, and specifically from failing to comply with Title III of the ADA, 42 U.S.C. §§ 12181-89 and its implementing regulations, 28 C.F.R. Part 36 and 49 C.F.R. Parts 37 and 38;

C.      Order Defendant to comply with the requirements of Title III of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulations, 28 C.F.R. Part 36 and 49 C.F.R. Parts 37 and 38;

D.      Order Defendant to revise its policies, practices, and procedures to bring its bus transportation services into compliance with Title III of the ADA, 42 U.S.C.  §§ 12181-89, and its implementing regulations, 28 C.F.R. Part 36 and 49 C.F.R. Parts 37 and 38;

E.      Award compensatory damages, including damages for pain, suffering, and emotional distress, to persons aggrieved by Defendant's actions, or failures to act, in violation of the ADA for injuries suffered as the result of Defendant's violations of Title III of the ADA, 42 U.S.C. §§ 12181-12189, and its implementing regulations, 28 C.F.R. Part 36 and 49 C.F.R. Parts 37 and 38;

F.      Assess a civil penalty against Defendant in the maximum amount authorized by 42 U.S.C. § 12188(b)(2)(C), to vindicate the public interest; and

G.      Order such other appropriate relief as the interests of justice may require.

## **Jury Demand**

Plaintiff United States requests a trial by jury.

Respectfully submitted this 8th day of February, 2016.

FOR THE UNITED STATES OF
AMERICA

LORETTA E. LYNCH
Attorney General of the United States

CHARLES M. OBERLY, III
UNITED STATES ATTORNEY

By:_____
Jennifer L. Hall (#5122)
Assistant United States Attorney
1007 N. Orange Street, Suite 700
Wilmington, Delaware 19801
jennifer.hall@usdoj.gov
(302) 573-6277

VANITA GUPTA
Principal Deputy Assistant Attorney General

EVE L. HILL
Deputy Assistant Attorney General
Civil Rights Division

REBECCA B. BOND
Chief
KEVIN J. KIJEWSKI
Deputy Chief
Disability Rights Section
Civil Rights Division

ANNE E. LANGFORD
NABINA SINHA
Trial Attorneys
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W. – NYA
Washington, DC  20530
202-616-2730 (telephone)
anne.langford@usdoj.gov
nabina.sinha@usdoj.gov

_February 4, 2016_
Date