IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>GREYHOUND LINES, INC.,<br>Defendant. | ) | Civil Action No. 16-67-RGA |

**CONSENT DECREE**

This matter is before the Court for entry of judgment by consent of the Parties (Plaintiff United States of America and Defendant Greyhound Lines, Inc. ["Greyhound"]) to resolve the above-captioned civil action. The United States brought this action to enforce the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and its implementing regulations, 29 C.F.R. Part 36 and 49 C.F.R. Parts 37 and 38. The United States alleges that Greyhound has failed to provide full and equal enjoyment of its transportation services to persons with disabilities, in violation of Title III of the ADA, and that Greyhound's discriminatory actions constitute a pattern or practice of discrimination and constitute discrimination against a group of persons that raises an issue of general public importance. Greyhound denies these allegations and asserts that it is and has been committed to complying with the ADA and to accommodating persons with disabilities, but it enters into this Decree voluntarily in order to devote its resources to continuing to improve transportation services to passengers with disabilities, rather than to litigation.

The United States and Greyhound agree that it is in the Parties' best interests, and the United States believes it is in the public interest, to resolve this matter on mutually agreeable

terms without resort to protracted litigation. The Parties acknowledge and agree that the fact that Greyhound has entered into this Consent Decree should not be considered an admission or evidence of guilt or liability. The Parties therefore agree and stipulate to the Court's entry of this Consent Decree ("Decree") resolving the United States' complaint against Greyhound.

Now it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

## PARTIES

1. Plaintiff is the United States of America.

2. Defendant Greyhound is a Delaware corporation with its principal place of business at 350 N. St. Paul Street, Dallas, Texas 75201. Greyhound provides intercity bus transportation and is a subsidiary, through a number of intermediate companies, of FirstGroup plc. Greyhound is a public accommodation within the meaning of 42 U.S.C. § 12182 and the Department of Justice's implementing regulation, 28 C.F.R. Part 36. Greyhound operates a fixed-route transportation system within the meaning of 42 U.S.C. § 12181(4); operates over-the-road buses ("OTRBs") within the meaning of 42 U.S.C. § 12181(5) and 49 C.F.R. § 37.3; is a large operator of such buses within the meaning of 49 C.F.R. Part 37; and is a Class I motor carrier within the meaning of 49 C.F.R. § 369.3. Greyhound is a private entity that provides fixed-route transportation to the public; it is primarily engaged in the business of transporting people, and its operations affect commerce. *See* 42 U.S.C. § 12184(a); 49 C.F.R. § 37.3.

## TERMS OF AGREEMENT

### General Obligations

3. Greyhound will not discriminate against any individual on the basis of disability in providing the full and equal enjoyment of Greyhound's services. 42 U.S.C. § 12184; 49 C.F.R. § 37.5(f).

4. Greyhound will not exclude persons with disabilities from participation in or deny them the benefits of its transportation services. 42 U.S.C. § 12184; 28 C.F.R. pt. 36; 49 C.F.R. pts. 37, 38.

5. Greyhound will make reasonable modifications to its policies, practices, and procedures when such modifications are necessary to provide transportation services to individuals with disabilities. 42 U.S.C. §§ 12182, 12184; 28 C.F.R. § 36.302; 49 C.F.R. § 37.5(f). These reasonable modifications will include, but are not limited to, providing priority seating, boarding assistance, and baggage assistance.

6. Greyhound will maintain in operative condition those features of vehicles that are required to make the vehicles accessible to and usable by individuals with disabilities. 42 U.S.C. § 12184; 49 C.F.R. § 37.161. These features include lifts and other means of access to vehicles and securement devices. 49 C.F.R. § 37.161(b). Such accessibility features must be repaired promptly if they are damaged or out of order, and reasonable steps must be taken in the interim to accommodate individuals with disabilities who would otherwise use the feature. 42 U.S.C. § 12184; 49 C.F.R. § 37.161(b).

7. Greyhound will ensure that personnel are trained to proficiency as appropriate to their duties in, among other things, proper operation and maintenance of accessibility features and equipment (including, but not limited to, lifts, securement devices, and the "kneeling" of buses that have such capability), boarding assistance, securement of mobility aids, and sensitive and appropriate interaction with passengers with disabilities. 42 U.S.C. § 12184; 49 C.F.R. §§ 37.173, 37.209.

8. Whenever Greyhound makes an intermediate or rest stop, all passengers with disabilities, including individuals using wheelchairs, will be permitted to leave and return to the

bus on the same basis as other passengers. Greyhound will ensure that assistance is offered and provided to passengers with disabilities as needed to enable such passengers to get on and off the bus at the stop. 42 U.S.C. § 12184; 49 C.F.R. § 37.201.

9. Greyhound will provide reservation services to passengers with disabilities equivalent to those provided to other passengers. 42 U.S.C. § 12184; 49 C.F.R. § 37.207(d).

10. Greyhound will assist individuals with the use of securement systems and lifts, where necessary or upon request (including for de-boarding at intermediate or rest stops). 42 U.S.C. § 12184; 49 C.F.R. §§ 37.165(f), 37.201.

11. Greyhound will not use or request the use of persons other than its employees (*e.g.*, family members or traveling companions of a passenger with a disability, medical, or public safety personnel) for routine boarding or other assistance to passengers with disabilities, unless the passenger requests or consents to assistance from such persons. 42 U.S.C. § 12184; 49 C.F.R. § 37.207(b).

12. Greyhound will not require or request passengers with disabilities to reschedule their trips or travel at a time other than the time the passenger has requested in order to receive accessible transportation. 42 U.S.C. § 12184; 49 C.F.R. § 37.207(c). If the number of passengers using wheelchairs exceeds the number of securement locations, Greyhound will assign the securement locations on a first-come, first-served basis. 42 U.S.C. § 12184; 49 C.F.R. § 37.205.

13. Greyhound retains any applicable defenses, limitations, or exclusions available to it under the ADA.

**Injunctive Relief**

14. ADA Policies. Greyhound will ensure, as of the Effective Date of this Decree ("Effective Date"), compliance with its existing obligations under the ADA, including those listed in paragraphs 3 through 13 of this Decree.

15. ADA Compliance Manager. Within thirty (30) days of the Effective Date, Greyhound will hire a person, who has not been previously employed by Greyhound, as its ADA Compliance Manager. The ADA Compliance Manager will report to senior management at Greyhound headquarters and will be knowledgeable of a) the terms of this Decree; and b) title III of the ADA and its accompanying regulations under 28 C.F.R. Part 36 and 49 C.F.R. Parts 37 and 38. The ADA Compliance Manager will coordinate and monitor Greyhound's ADA compliance (including its compliance with the Decree) and will regularly review disability-related complaints made directly to Greyhound by members of the public and Greyhound's responses thereto. The ADA Compliance Manager will also be responsible for Greyhound's reporting obligations under this Decree. The ADA Compliance Manager will also undertake a review of Greyhound's policies and will implement existing policies or recommend that Greyhound adopt and implement new policies covering the existing obligations listed in paragraphs 3 through 13 of this Decree, within ninety (90) days of his or her hire. Further, the ADA Compliance Manager will carry out other duties as specified under the Decree.

16. Reservations. Within one hundred eighty (180) days of the Effective Date, Greyhound will ensure that persons with disabilities can make reservations for travel through its online reservation system. This will include ensuring that persons with disabilities who use wheelchairs or other mobility devices can book their reservations online, without being directed separately to call or otherwise contact Greyhound to complete their reservation. However,

customers with disabilities are subject to the same capacity limitations as all customers. Greyhound sells tickets on a first-come, first-served basis and is not required to displace passengers who have already purchased tickets to accommodate a passenger with a disability who subsequently seeks to buy a ticket. Greyhound will also ensure that all persons with disabilities have the option during the online booking process to request reasonable modifications, assistance, or other disability-related services. This option shall consist of the following menu of requests: "travel in a wheelchair," "travel with a service animal," "other" (to indicate other reasonable modifications, assistance, or disability-related services), and such other specific categories of requests proposed by Greyhound and on which the Parties agree in writing.

17. Ticketing Procedure for Online Booking. A request at the time of online booking by or on behalf of a customer with a disability for reasonable modifications, assistance, or other disability-related services in the categories as reflected in Paragraph 16, subject to abbreviation as necessary, will be noted on the customer's ticket and on the manifest of passengers available to drivers and Greyhound terminal personnel.

18. Implementation of Disability-Related Requests. A request for a reasonable modification or other disability-related assistance, other than a request for a wheelchair accessible bus so that the customer may travel in his/her wheelchair, whether made during the ticketing or reservation process or otherwise prior to travel, will also have to be communicated to Greyhound personnel at the location where the assistance or reasonable modification is required. Requests will be honored by Greyhound for all segments of a trip operated by Greyhound (that is, if a customer must transfer buses en route to his or her destination, such requests will be honored by subsequent Greyhound personnel involved in subsequent portions of a trip) as well as for all portions of "round trip" travel operated by Greyhound. Nothing in this paragraph will

require requests for an accessible bus, assistance, or reasonable modifications of Greyhound's policies to be made either online or by telephone at any set period of time in advance of a trip. Such requests may be made, and will be honored, at the time of travel, subject to applicable limitations and exceptions under the ADA.

19. Interline Service.

Interline service is when the general public can purchase a ticket or make a reservation with one operator for a fixed-route trip of two or more stages in which another operator provides part of the service. *See* 49 C.F.R. § 37.187. Within thirty (30) days of the Effective Date, Greyhound shall ensure the following with respect to interline service:

a) *General - interline.* If a trip is booked through Greyhound by or for a passenger with a disability for whom an accessible bus has been requested, and any portion of that trip will be fulfilled through interline service, then Greyhound i) will immediately forward the request for an accessible bus to the non-Greyhound operator; and ii) will provide notification to the person making the request for an accessible bus of the interline nature of the trip during the ticketing process and make available to that person the contact information for communicating with the interline provider regarding disability-related issues, should that person so choose.

b) *Website notice - interline.* Greyhound will post on its website at - https://www.greyhound.com/en/help-and-info/travel-info/customers-with-disabilities (or its equivalent in the event that this URL changes) - notice that if a portion of a trip will occur via an interline carrier: i) the carrier may require 48 hours advance notice in order to provide an accessible bus; ii) if there are fewer than forty-eight (48) hours between booking and the trip, of the possibility that an accessible bus might not be available at his or her transfer point to complete the subsequent portion of the trip; and iii) it is advisable for anyone travelling in a

wheelchair whose itinerary includes a non-Greyhound bus to contact that non-Greyhound bus operator to ensure the availability of accessible features.

c) *Online booking - interline.* No later than one year after the Effective Date, Greyhound's online booking process will clearly notify (via an informational statement that customers must acknowledge during the purchase process) customers who have booked a trip for travel using a wheelchair when a portion of a trip will occur via an interline carrier, that: i) the carrier may require forty-eight (48) hours' advance notice in order to provide an accessible bus, ii) of the possibility that an accessible bus might not be available at his or her transfer point to complete the portion of the trip operated by the interline carrier, and iii) it is advisable to contact the non-Greyhound bus operator to ensure the availability of accessible features.

20. ADA Information Statement. Within thirty (30) days of the Effective Date, Greyhound will post an ADA Information Statement ("Statement") at the top of the "Customers With Disabilities" portion of its website and prominently at all physical locations that it operates. For locations not operated by Greyhound, Greyhound will notify such sites that the Statement should be posted. The Statement will affirm Greyhound's commitment to serve persons with disabilities in accord with its obligations under the ADA. The Statement will say that individuals may contact Greyhound with questions, concerns, or complaints regarding travel on Greyhound for customers with disabilities, and will provide a Greyhound telephone number for the receipt of such questions, concerns, or complaints and will also list the email address referenced in the immediately following paragraph of this Decree. The Statements will be no smaller than 11 inches by 17 inches, with the Statement in Times New Roman font (font size no smaller than 20-point) and will be placed, easily visible to the general public, on (or immediately next to) each door that a departing customer may use to exit the physical location and gain access to a bus, if

reasonably possible based on the size and layout of the physical location at issue. In addition, Statements will be posted at each Greyhound-operated location where an individual may buy a ticket (i.e., if there are multiple ticketing agents or kiosks, a Statement will be placed at each one), if reasonably possible based on the size and layout of the physical location at issue. The Statements required under this paragraph will remain posted for the Term of the Decree and replaced within one business day of discovery of any significant damage.

21. Complaints Made to Greyhound. Greyhound will post its process for receiving and addressing complaints regarding services for individuals with disabilities under a heading entitled "Your Rights as a Customer/Filing a Complaint with Greyhound" at the "Customers With Disabilities" page of its website. In addition to listing the existing mail and telephone options currently available to customers who wish to make a disability-related complaint, Greyhound's website will include a direct link to an appropriate Greyhound email address to enable individuals who wish to submit a complaint online to do so. This email account must be checked on at least a daily basis during all business days and each complaint must be substantively responded to (including providing any offer of compensation, where applicable) within thirty (30) days of its receipt under normal circumstances.

22. ADA Training.

a) By April 30, 2016, and every year thereafter for the Term of this Decree, Greyhound will require all employees and contractors who may interact with the public either face-to-face, via telephone, in writing, or otherwise (including, but not limited to, persons who staff physical locations that Greyhound services and Greyhound bus operators), to attend in-person training on the nondiscrimination mandate of title III of the ADA; ADA requirements for large, fixed-route OTRB operators; and the existence and requirements of this Decree ("ADA Training"). Such

ADA Training will include a mandatory "question and answer" period at its conclusion. Persons involved in the reservation process may attend equivalent training that is not in-person (*e.g.*, training via telephone conference and online training).

b) For persons who must receive ADA Training pursuant to this Decree, but who did not receive training on a designated training date required under this Agreement (for instance, because they were on leave from Greyhound, because they began their affiliation with Greyhound subsequent to the training date, or because they assumed a position within Greyhound subjecting them to coverage under this paragraph subsequent to the training date), Greyhound will provide ADA Training in person or by other means to such persons within thirty (30) days after the individual's commencement of service to Greyhound in a position covered by this paragraph or within thirty (30) days of their return to Greyhound (for instance, from leave).

c) Greyhound will send via electronic mail to the United States the proposed curriculum for the ADA Training, as well as the name(s), qualifications (including resume(s)), and contact information of the individual(s) who will conduct the training, no later than ninety (90) days after the Effective Date. Greyhound's choice of individual(s) who will conduct the training will be subject to approval by the United States which approval will not be unreasonably withheld and will take into account the number of trainers which may be required to train individuals in multiple locations working multiple shifts. Greyhound will adopt any changes to the curriculum made by the United States which do not impose significant additional expense or changes to its operations. Greyhound will maintain attendance logs reflecting the names and titles of attendees for each session of the ADA Training conducted under this Decree.

23. <u>Technical Training.</u>

a) By April 30, 2016, and every year thereafter for the Term of this Decree, Greyhound will require all employees and contractors who may be involved in operating the accessibility features of Greyhound's bus fleet (including lifts, securement devices, and the "kneeling" of buses) to attend training regarding the proper and effective operation of the accessibility features of Greyhound's fleet ("Technical Training"). The Technical Training will include a demonstration of the proper and effective operation of each of those accessibility features. At each Technical Training, attendees will be instructed (and will be provided time by Greyhound) to operate each such accessibility feature on a Greyhound bus within forty-eight (48) hours of the conclusion of the Technical Training. Greyhound will collect a written certification from each Technical Training attendee within one week of the completion of the Technical Training whereby each such person will certify his or her attendance at the Technical Training and his or her completion of the operation of the accessibility features of a Greyhound bus (including, but not limited to, lifts, securement devices, and the "kneeling" of buses).

b) For persons who must receive Technical Training pursuant to this Decree, but who did not receive training on a designated training date required under this Agreement (for instance, because they were on leave from Greyhound, because they began their affiliation with Greyhound subsequent to the training date, or because they assumed a position within Greyhound subjecting them to coverage under this paragraph subsequent to the training date), Greyhound will provide the Technical Training to such persons within fifteen (15) days after the individual's commencement of service to Greyhound in a position covered by this paragraph or within fifteen (15) days of their return to Greyhound (for instance, from leave).

c) Greyhound will maintain attendance logs reflecting the names and titles of attendees for each session of the Technical Training conducted under this Decree and will maintain the written certifications required under section a) of this paragraph.

24. Recordkeeping and Reporting Requirements.

a) Greyhound will collect in a centralized and easily searchable electronic format a "review log" of every complaint Greyhound receives (whether formal or informal, and regardless of the format in which the complaint was received, where sufficient identifying information is available to track and investigate the complaint) regarding disability-related issues or services provided by Greyhound to persons with disabilities. The log will include the following information for each complaint: i) name of complainant; ii) name of affected individual (if different from the name of the complainant); iii) physical address, phone number, and email address of affected individual; iv) date of incidents; v) detailed substance of complaint; vi) name of Greyhound personnel involved in incidents; vii) cost of affected individual's ticket; viii) Greyhound's resolution of complaint; and ix) any other information relevant to the complaint. Greyhound will provide a copy of this "review log" to the United States every three (3) months after the Effective Date for the Term of the Decree. Greyhound will also provide a current and updated copy of this log to the United States at the United States' written request, within three (3) business days of such written request.

b) Every three (3) months after the Effective Date for the Term of this Decree, Greyhound will submit a report to the United States regarding its compliance efforts undertaken pursuant to this Decree. The report will include, for the period subsequent to its immediately prior report to the United States, the following:

i) The dates of Greyhound's ADA Training and Technical Training;

ii) All attendance logs associated with the ADA Training and the Technical Training;

iii) All written certifications gathered pursuant to the Technical Training; and

iv) The number of complaints logged in the "review log," described in subparagraph a) above.

All information required to be provided to the United States under this Decree and pursuant to this paragraph will be delivered to the undersigned counsel by electronic mail at nabina.sinha@usdoj.gov and anne.langford@usdoj.gov or as otherwise directed by the United States.

**Compliance Testing**

25. The United States may monitor Greyhound's compliance with this Decree, including, but not limited to, conducting testing at any location in which Greyhound personnel interact with the public.

**Monetary Relief**

Compensation For Select Individuals Identified by the United States

26. Greyhound agrees to pay three-hundred thousand dollars ($300,000) to directly compensate select individuals identified by the United States (in amounts directed by the United States) whom the United States alleges were not afforded access or services in accordance with title III of the ADA. No individual compensated under this Paragraph shall also be eligible to receive compensation under any other Paragraph of this Decree. Further, no individual compensated under this Paragraph shall receive payment of more than $50,000. In order to establish a final roster of individuals to be paid under this Paragraph, the Parties agree to follow the procedure outlined below.

a) Within sixty (60) days from the Effective Date, the United States will identify to Greyhound a list of at least ten (10) individuals meeting this criteria.

b) Within ninety (90) days from the Effective Date, Greyhound will indicate to the United States whether any of these individuals has previously signed a release of claims with Greyhound regarding disability-related incidents (and, if so, will provide a copy of that document to the United States).

c) If the United States agrees that any such individual is ineligible to receive compensation under this Paragraph as a result of previously releasing Greyhound from disability-related claims, then the United States shall have one hundred twenty (120) days from the Effective Date to identify to Greyhound substitute individuals for compensation under this Paragraph.

d) Within one hundred fifty (150) days from the Effective Date, Greyhound will indicate to the United States whether any of these most recently-identified individuals has previously signed a release of claims with Greyhound regarding disability-related incidents (and, if so, will provide a copy of that document to the United States).

e) Within one hundred eighty (180) days from the Effective Date, the Parties shall meet and confer to discuss any disagreement regarding whether or not a particular individual is eligible for payment under this Paragraph due to a previous release of claims with Greyhound regarding disability-related incidents or other eligibility requirements, and shall work in good faith to resolve such disagreement.

f) Within one hundred ninety-four (194) days from the Effective Date, the United States shall circulate to Greyhound a final roster of individuals eligible for

compensation under this Paragraph and shall indicate the sum to be paid to each such individual. The United States' final roster shall include only individuals previously identified to Greyhound through the process outlined in the subparts of this Paragraph (though need not include all such individuals so identified and deemed eligible).

g) Within sixty (60) days of receipt of an individual's executed copy of the Release of All Claims attached hereto as Exhibit 1 and any other necessary information required to make payment as determined by agreement of the Parties, each person shall be paid in the amount indicated. Such payments will be made by checks payable to the order of each individual and delivered to each individual at the address he or she indicates on the completed Release of All Claims.

Compensation For Other Aggrieved Individuals

27. Claims Procedure. The Parties agree to establish a Claims Procedure ("Claims Procedure"), to be administered by a Claims Administrator ("Administrator") for the purpose of compensating individuals who assert ADA claims meeting established criteria and who are identified through the procedures set forth in this Decree and as further defined below ("Eligible Persons"). The Parties agree that there shall be no cap on the total amount disbursed by Greyhound under this Claims Procedure, but that payments to Eligible Persons shall be subject to certain procedures, standards, and limitations on compensation as agreed by the Parties. Greyhound shall take whatever actions are necessary to provide to the Administrator all funds required to compensate Eligible Persons under Paragraphs 27-37 of this Decree. Greyhound will bear all costs of making and issuing payments to Eligible Persons.

28. Retention of Administrator. No later than thirty (30) days from the Effective Date, Greyhound will enter into a contract to retain an independent Administrator, subject to approval by counsel for the United States, not to be unreasonably withheld, to implement the Claims Procedure pursuant to this Decree. Greyhound will provide the United States with the credentials and resumes of the persons or entities whom it intends to use as Administrator within fifteen (15) days of the Effective Date. The Administrator will not be an employee of Greyhound, and will have demonstrated proficiency in exercising sound, independent judgment in the application of claims criteria and in interacting with claimants with disabilities (including, but not limited to, the capacity to effectively receive claims from individuals with a variety of disabilities and communication needs). The Administrator will work cooperatively with the United States in the conduct of the Administrator's activities under this Decree. Greyhound will bear all costs associated with contracting for the Administrator. The Administrator's contract will require the Administrator to: a) comply with the provisions of this Decree as applicable to the Administrator, b) work cooperatively with the United States in the conduct of the Administrator's activities, including reporting regularly to and providing all requested information to the United States, and c) maintain the confidentiality of all materials received in connection with its duties under the Decree. Greyhound's contract with the Administrator shall include a Statement of Work that details the duties and deliverables of the Administrator. The Parties shall agree on the language contained in the Statement of Work.

29. Duties of The Administrator. The duties of the Administrator shall include: a) communicating with and receiving information from potential Eligible Persons and other individuals involved in evaluating eligibility; b) distributing documents to potential Eligible Persons and other individuals involved in evaluating eligibility; c) tracking the return of claims

forms, releases, and other documents; d) reviewing documents provided by the Parties, potential Eligible Persons, and other individuals as part of the claims process; e) applying criteria established by agreement of the Parties for compensation of Eligible Persons to information received during the claims process; f) notifying Eligible Persons of the decision on their claims and obtaining releases of claims (attached hereto as Exhibit 1) from, and distributing payments to, Eligible Persons; g) reporting to the Parties on the Fund distribution process; h) filing all tax documentation as may be required by law; i) establishing and maintaining an accessible[1] website providing information about the claims process; j) establishing cost-free means for potential Eligible Persons to contact the Administrator, including both email and a toll-free number (and accompanying TTY text telephone number) and requirements for prompt responses to inquiries from the public; and k) such other duties that are necessary to carry out the provisions of this Decree.

30. Dispute Resolution. In the event either of the Parties has reason to believe that the Administrator is not materially complying with the terms of its contract with Greyhound, the Parties shall meet and confer for the purpose of agreeing on a course of action to effectuate the Administrator's material compliance with its contract. In the event that the Parties are unable to so agree, the Parties may present the matter to the Court and request appropriate relief, including

---

[1] For purposes of this Decree, websites and documents will be considered "accessible" if they comply with the Level A and Level AA Success Criteria and Conformance Requirements of the Web Content Accessibility Guidelines 2.0 (Dec. 11, 2008) ("WCAG 2.0 Level AA"), published by the World Wide Web Consortium ("W3C"), Web Accessibility Initiative ("WAI"), available at www.w3.org/TR/WCAG/. "Websites," as used herein, includes: (i) all web pages, web applications, resources, and services within the website domain, its subdomains, and related domains; and (ii) all of the information, resources, files, databases, images, graphics, text, audio, video, multimedia, services, code, and any other communications sent by or retrieved from the website to members of the public accessing it.

removal and replacement of the Administrator. The Administrator shall suspend all investigation, decision-making, and disbursements pending the Court's decision.

31. Eligible Persons. Subject to the United States' approval, monetary relief will be provided to persons whom the Administrator has determined: a) are persons with disabilities who traveled or sought to travel on Greyhound within three (3) years prior to the date that the United States filed this Decree with the Court, b) have contacted the Administrator within the Claims Period as set forth in this Decree, and c) are eligible for compensation under the conditions and limitations established by the Parties pursuant to this Decree.

32. Notice. Within forty-five (45) days of the Effective Date, Greyhound will cause to be published information as follows:

a) *Website*. Greyhound will publish and maintain:

i) For the Claims Period, a Notice 1 of Americans with Disabilities Act Settlement ("Notice 1 of Settlement") on its website in a conspicuous location (*i.e.*, directly linked from the primary web portals used by customers, with the description "Americans with Disabilities Act Consent Decree"). Such posting will be in an accessible format. The Notice 1 of Settlement will be comprised of the text and images as set forth in Exhibit 2a.

ii) From the end of the Claims Period through the remainder of the term of the Decree, a Notice 2 of Americans with Disabilities Act Settlement ("Notice 2 of Settlement") on its website in a conspicuous location (*i.e.*, directly linked from the primary web portals used by customers, with the description "Americans with Disabilities Act Consent Decree"). Such

posting will be in an accessible format. The Notice 2 of Settlement will be comprised of the text and images as set forth in Exhibit 2b.

b) *Direct notice to potential Eligible Persons.* Greyhound will make a one-time distribution of a Notice of Claims Procedure to each individual who has i) booked an accessible bus within three (3) years prior to the Effective Date and for whom Greyhound has contact information; ii) lodged a disability-related complaint with Greyhound within three (3) years prior to the Effective Date, either in writing or by phone to Greyhound's ADA Compliance Office; or iii) requested a disability-related modification and was issued a Greyhound "control number" within three (3) years prior to the Effective Date. Greyhound will send the Notice of Claims Procedure by first class, postage-prepaid U.S. mail to the address provided by the individual and (in addition) in accessible electronic format if Greyhound has an email address for that individual.

If any such Notices of Claims Procedure are returned to Greyhound due to issues with the street address to which they were mailed, or if any such Notices of Claims Procedure are undeliverable to the email address to which they were directed, in each such case Greyhound will, within ten (10) days of the return of such mail or email, send all available contact information for that individual to the Administrator for action as directed by the Parties.

c) *Social media.* Forty-five (45) days following the Effective Date and again halfway through the Claims Period, Greyhound will cause to be published information regarding the establishment of the Claims Procedure as follows:

i) Greyhound shall post and leave up a tweet on its Twitter account, @GreyhoundBus, with the following text and a link to the Notice of Claims Procedure (comprised of the text and images as set forth in Exhibit 3) on its website: "We have reached an agreement with the US Dept of Justice @CivilRights to resolve accessibility claims. Read more: [link]".

ii) Greyhound shall post and not delete a post on its Facebook page (https://www.facebook.com/GreyhoundBus), with the following text and a link to the Notice of Claims Procedure on its website: "Greyhound has entered a Consent Decree with the U.S. Department of Justice to resolve incidents of inaccessibility that may impact our passengers with disabilities. To learn more about this agreement, visit: [link]."

33. Claims Period. Potential Eligible Persons will have nine (9) months from the Effective Date ("Claims Period") within which to contact the Administrator to assert any claims in connection with this Decree.

34. Eligibility and Award Criteria. Within thirty (30) days of the Effective Date, the Administrator will a) propose any necessary revisions to the eligibility and award criteria agreed upon by the Parties, and b) address any other considerations associated with establishing, maintaining, and distributing monetary relief to Eligible Persons, for mutual approval by the Parties. The Parties will have ten (10) days to agree upon any revisions relating to the Administrator's proposals. The Administrator will accept and implement any changes to the eligibility and award criteria as agreed upon by the Parties. No procedures beyond those approved by the Parties pursuant to this paragraph will be imposed on any Eligible Person.

35. Claims Review. The Administrator will implement a claims review procedure as agreed upon by the Parties. The Administrator will make payments to Eligible Persons in accordance with the eligibility and award criteria and claims procedure after obtaining a release of claims (attached hereto as Exhibit 1). No individual may request a review by the Court or the Administrator of these determinations.

36. Access. Greyhound will provide the United States and/or the Administrator access to any information that the United States and/or the Administrator seek in furtherance of providing notice to potential Eligible Persons or in furtherance of any aspect of the process by which Eligible Persons attempt to assert a claim.

37. Taxes and Attorneys' Fees. Eligible Persons will be solely responsible for any applicable federal, state, and local taxes and attorneys' fees due by virtue of their receipt of payments received under this Decree. Greyhound will be solely responsible for paying any applicable federal, state, and local taxes it owes, if any (*i.e.*, Greyhound's payments will not be deducted from any monetary award to Eligible Persons).

Civil Penalty

38. The ADA authorizes the Attorney General to seek, and the Court to award, civil penalties of up to $75,000 for a first violation of Title III of the ADA and up to $150,000 for each subsequent violation. 42 U.S.C. §§ 12188(b)(2)(C), (b)(3); 28 C.F.R. §§ 36.504(a)(3), (b). Greyhound will pay a civil penalty to the United States in the amount of Seventy-Five Thousand Dollars ($75,000). Within fifteen (15) days after the Effective Date, Greyhound will deliver a check made payable to "U.S. Treasury" to undersigned counsel for the United States by Federal Express, to: 1425 New York Avenue, NW, 4th Floor, Washington, DC 20005.

**Additional Terms**

39. Effective Date. This Decree will become effective as of the date that is entered by the Court.

40. Term. This Decree will remain in effect for three (3) years from its Effective Date ("Term"), unless otherwise extended by order of the Court. The United States' Complaint will be dismissed with prejudice, except that the United States may petition the Court at any time during the duration of this Decree to reopen the case for the purpose of enforcing the Decree and the Court will retain jurisdiction to enforce this Decree. This Decree may be extended by motion of the United States to the Court, for good cause.

41. Review by United States. The United States may review Greyhound's compliance with this Decree or the ADA at any time.

42. Scope and Timelines. This Decree constitutes the entire agreement between the United States and Greyhound relating to the above-captioned matter and Department of Justice ("D.J.") No. 202-1-65 and concerns only the ADA claims under, arising out of, or related to D.J. No. 202-1-65; no other statement, promise, or agreement, either written or oral, will be enforceable regarding the matters raised in this Decree and its exhibits. Any timelines for performance fixed by, or pursuant to, this Decree (except for the Term) may be extended by mutual written agreement of the Parties.

43. Termination of Investigation. In exchange for Greyhound's agreement to enter into this Consent Decree, the United States agrees to terminate its investigation of DJ No. 202-1-65, and agrees that, except as provided in Paragraph 40, it will not institute any other civil action alleging discrimination based on the allegations contained in the Complaint filed by the United

States concurrently with the Decree in this matter or similar allegations which could have been contained therein.

44. Compliance with Applicable Laws. This Decree does not constitute a finding by the United States that Greyhound is in full compliance with the ADA or an admission by Greyhound that it is not in compliance. This Decree does not purport to remedy any other potential violations of the ADA or any other law. This Decree does not affect Greyhound's continuing responsibility to comply with the ADA.

45. Binding. This Decree will be binding on the United States and Greyhound, including all principals, agents, executors, administrators, representatives, employees, successors in interest, beneficiaries, assigns, and legal representatives thereof. In the event that Greyhound seeks to sell, transfer, or assign all or part of its interest during the term of this Decree, as a condition of sale, transfer, or assignment, Greyhound will obtain written accession of the successor or assignee to any obligation remaining under this Decree for the remaining Term of this Decree.

46. Non-Waiver. Failure by the United States to enforce any provision or deadline of this Decree will not be construed as a waiver of its right to enforce any provisions or deadlines of this Decree.

47. Severability. If any provision of this Decree is determined by any court to be unenforceable, the other provisions of this Decree will nonetheless remain in full force and effect, provided, however, that if the severance of any such provision materially alters the rights or obligations of the Parties, the United States and Greyhound will engage in good faith negotiations in order to adopt mutually agreeable amendments to this Decree as may be

necessary to restore the Parties as closely as possible to the initially agreed upon relative rights and obligations.

48. Litigation Hold. The Parties agree that as of the entry of this Decree litigation is not reasonably foreseeable concerning the matters described in this Decree. To the extent that either party previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in this Decree, the party is no longer required to maintain the litigation hold.

49. Costs. Each party to this Decree will bear its own costs and attorneys' fees associated with this litigation.

50. Signatory. A signatory to this document in a representative capacity for Greyhound certifies that he or she is authorized to enter into and consent to the terms and conditions of this Decree and to execute and legally bind that party to this Decree.

SO ORDERED this 10 day of February, 2016.

United States District Judge
District of Delaware

By their signatures below, the Parties consent to the entry of this Decree.

**FOR THE UNITED STATES OF AMERICA:**

LORETTA E. LYNCH
Attorney General of the United States

CHARLES M. OBERLY, III
United States Attorney

By:

Jennifer L. Hall (#5122)
Assistant United States Attorney
District of Delaware
1007 N. Orange Street, Suite 700
Wilmington, Delaware 19801
jennifer.hall@usdoj.gov
(302) 573-6277

VANITA GUPTA
Principal Deputy Assistant Attorney General

EVE L. HILL
Deputy Assistant Attorney General
Civil Rights Division

REBECCA B. BOND
Chief
KEVIN J. KIJEWSKI
Deputy Chief
Disability Rights Section
Civil Rights Division

ANNE E. LANGFORD
NABINA SINHA
Trial Attorneys
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W. – NYA
Washington, DC 20530
202-616-2730 (telephone)
anne.langford@usdoj.gov
nabina.sinha@usdoj.gov

SO ORDERED this ____ day of __________, ________.

______________________
United States District Judge
District of Delaware

By their signatures below, the Parties consent to the entry of this Decree.

**FOR THE UNITED STATES OF AMERICA:**

LORETTA E. LYNCH
Attorney General of the United States

CHARLES M. OBERLY, III
United States Attorney

By: ______________________
Jennifer L. Hall (#5122)
Assistant United States Attorney
District of Delaware
1007 N. Orange Street, Suite 700
Wilmington, Delaware 19801
jennifer.hall@usdoj.gov
(302) 573-6277

VANITA GUPTA
Principal Deputy Assistant Attorney General

EVE L. HILL
Deputy Assistant Attorney General
Civil Rights Division

REBECCA B. BOND
Chief
KEVIN J. KIJEWSKI
Deputy Chief
Disability Rights Section
Civil Rights Division

______________________
ANNE E. LANGFORD
NABINA SINHA
Trial Attorneys
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W. – NYA
Washington, DC 20530
202-616-2730 (telephone)
anne.langford@usdoj.gov
nabina.sinha@usdoj.gov

**FOR GREYHOUND LINES, INC.:**

____________________________
David S. Leach, President &
Chief Executive Officer
Greyhound Lines, Inc.

# EXHIBIT 1

**RELEASE OF CLAIMS**

For and in consideration of the relief offered to me by Greyhound Lines, Inc. ("Greyhound") pursuant to the Consent Decree between the United States of America and Greyhound arising out of Department of Justice Investigation No. 202-1-65:

I, ______________________________, hereby release and forever discharge Greyhound, its parents and affiliates, and their current, past, and future officials, employees, and agents, of and from any Americans with Disabilities Act-related legal and/or equitable claims, and claims under any other federal, state, or local law or common law, arising out of the facts identified or allegations made in the Consent Decree or Complaint related to Department of Justice Investigation No. 202-1-65, including any claims related to or arising from an alleged failure to make disability-related accommodations. As a result, I agree and promise that I will not file any Americans with Disabilities Act-related suit, charge, complaint, proceeding or action at law, in equity, or otherwise (together, "Action") or any other Action relating to or arising from an alleged failure to make disability-related accommodations in any court, or any other judicial or administrative forum, against Greyhound arising out of the facts identified or allegations such as those made in the Consent Decree or Complaint related to Department of Justice Investigation No. 202-1-65. Excluded from this Release are any rights and claims that cannot be waived by law.

This Release constitutes the entire agreement between myself and Greyhound, without exception or exclusion.

I acknowledge that a copy of the Consent Decree has been made available to me. By signing this Release, I acknowledge that I have been provided the opportunity to review the Consent Decree with an attorney of my choosing.

I HAVE READ THIS RELEASE AND UNDERSTAND THE CONTENTS THEREOF AND I EXECUTE THIS RELEASE OF MY OWN FREE ACT AND DEED.

Date:_______________________

_____________________________

Complainant's Signature

Complainant's Full Mailing Address:

_____________________________

_____________________________

_____________________________

# EXHIBIT 2a



# Greyhound Lines To Improve Service For And Compensate Individuals With Disabilities

[Greyhound to insert its logo here.]

Greyhound Lines has entered into a Consent Decree with the U.S. Department of Justice (DOJ) to resolve a lawsuit brought by the DOJ under the Americans with Disabilities Act (ADA). This resolution addresses claims under the ADA, including claims that Greyhound failed to provide accessible transportation and transportation-related services to people with disabilities. Greyhound denies these allegations.

**Under the Consent Decree, Greyhound will improve its service to individuals with disabilities. Required improvements include more training for personnel, a streamlined complaint procedure, and the ability to request accommodations at time of online booking.**

**Greyhound will compensate individuals who experienced access barriers (to booking or travel) or accommodation issues by Greyhound from [insert date three (3) years prior to date DOJ filed decree with court] until [insert date DOJ filed decree with court].** To find out about the claims procedure and learn whether you are eligible to receive payment, please contact [insert Claims Administrator name] at [insert Claims Administrator email] or [insert Claims Administrator toll free voice and TTY telephone numbers] or [insert Claims Administrator URL dedicated for this fund].

A copy of the Consent Decree between the U.S. Department of Justice and Greyhound is available at www.ada.gov. For further information about the ADA, visit www.ada.gov or call the Department of Justice's toll-free ADA Information Line at 1-800-514-0301 (voice) or 1-800-514-0383 (TTY).

# EXHIBIT 2b



# Greyhound Lines To Improve Service For And Compensate Individuals With Disabilities

[Greyhound to insert its logo here.]

Greyhound Lines has entered into a Consent Decree with the U.S. Department of Justice (DOJ) to resolve a lawsuit brought by the DOJ under the Americans with Disabilities Act (ADA). This resolution addresses claims under the ADA, including claims that Greyhound failed to provide accessible transportation and transportation-related services to people with disabilities. Greyhound denies these allegations.

**Under the Consent Decree, Greyhound will improve its service to individuals with disabilities. Required improvements include more training for personnel, a streamlined complaint procedure, and the ability to request accommodations at time of online booking.**

A copy of the Consent Decree between the U.S. Department of Justice and Greyhound is available at www.ada.gov. For further information about the ADA, visit www.ada.gov or call the Department of Justice's toll-free ADA Information Line at 1-800-514-0301 (voice) or 1-800-514-0383 (TTY).

# EXHIBIT 3



# Greyhound To Compensate Individuals With Disabilities

[Greyhound to insert its logo here.]

Greyhound Lines has entered into a Consent Decree with the U.S. Department of Justice (DOJ) to resolve a lawsuit brought by the DOJ under the Americans with Disabilities Act (ADA). This resolution addresses claims under the ADA, including claims that Greyhound failed to provide accessible transportation and transportation-related services to people with disabilities. Greyhound denies these allegations.

**If you believe you were harmed by Greyhound's lack of accessible vehicles or transportation services, or by a failure to accommodate you based on your disability, since [insert date 3 years prior to date DOJ filed decree with court] until [insert date DOJ filed decree with court], you may be eligible to receive payment from Greyhound as a result of its agreement with the DOJ.**

To be eligible for a possible payment, you must submit a claim by [insert date 9 months after Effective Date]. You may obtain information on how to submit a claim by contacting the third-party claims administrator agreed to by the DOJ and Greyhound in any of the following ways: (1) visiting [insert Claims Administrator URL dedicated for this fund], (2) sending an email with your name, address, and telephone number to [insert Fund Administrator email], or (3) calling the claims administrator at [insert Fund Administrator toll free voice and TTY telephone numbers].

A copy of the Consent Decree between the DOJ and Greyhound is available at www.ada.gov. For further information about the ADA, visit www.ada.gov or call the Department of Justice's toll-free ADA Information Line at 1-800-514-0301 (voice) or 1-800-514-0383 (TTY).